IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CAROLINA CASUALTY INSURANCE COMPANY,

    Plaintiff,

  v.

RDD, INC.; DDR DANVILLE, INC.; and DARIN DEVINCENZI,

    Defendants.

No. C 09-00856 CW

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR CONTINUANCE UNDER RULE 56(F)

Plaintiff Carolina Casualty Insurance has moved for summary judgment, arguing that the insurance policy it issued to Defendants RDD, Inc., DDR Danville, Inc. and Darin Devincenzi should be rescinded because of alleged false representations made by Defendants in their application for the policy. Defendants cross-moved under Federal Rule of Civil Procedure 56(f) to continue the hearing date of Plaintiff's summary judgment motion, arguing that they have not had sufficient time to conduct all discovery needed to oppose Plaintiff's motion. Having considered the papers filed by the parties, the Court grants Plaintiff's summary judgment motion and denies Defendants' motion for a continuance under Rule 56(f).

## BACKGROUND

This action stems from Sarah Lemke's employment as a waitress at Forbes Mill Steakhouse, operated by Defendants, in Danville

California.[1]  On April 3, 2008, Lemke took temporary leave for undisclosed medical reasons.  On April 14, 2008, Lemke's attorney contacted Defendants to obtain various documents related to her employment and benefits package.  At this point, Lemke did not disclose the reason for her leave or ask anything of her employer.

In a letter dated April 28, 2008, Lemke quit her job with Forbes Mill Steakhouse.  She wrote, "Please accept this as notice of my immediate resignation.  I apologize for not giving two weeks notice . . . I must resigned [sic] because I was subject to sexual harassment by senior managers, peers and even owner's [sic] of the restaurant on nearly a weekly basis in the last year or so of my employment."  Devincenzi Decl., Exh. 2.  Lemke stated that when she "complained, I was retaliated against, my shifts changed, rude and mean comments were made to me and others who attempted to help me also suffered.  I was so distressed I felt hopeless."  Id.  Lemke also wrote, "Ultimately, the sexual harassment and retaliation negatively harmed my mental and physical health causing my doctor to ordered [sic] me to take medical leave.  My doctor now tells me that I cannot return to this work place as it would be utterly devastating to my health."  Id.

On April 29, 2008, the day after Defendants received this

---

[1] The relationship between Defendants RDD, DDR and Darin Devincenzi is not clear.  According to Plaintiff's complaint, RDD "operates" Forbes Mill Steakhouse and Devincenzi is the "President or Chief Executive Officer of RDD."  First Amended Complaint (FAC), ¶¶ 2, 15.  The insurance application at issue refers to RDD as "RDD LP dba Forbes Mill Steakhouse," and states that Devincenzi is a "partner."  Exhs. A, B.  The parties point to no document that describes DDR and its relationship to the matter, except that RDD, DDR and Devincenzi's moving papers state that they should collectively be referred to as "Defendants."  Motion at 1. Therefore, the Court will refer to RDD, DDR and Devincenzi collectively as such.

2

letter, they contacted their insurance broker, Harrington Insurance Agency, to obtain employment practices liability insurance. Defendants' counsel claims that Defendants "informed Harrington of the facts it then had regarding the Lemke circumstances. And Harrington informed NIA of those same facts." Zatulovsky Decl. ¶ 4. Defendants do not state in any more detail the "facts" they conveyed to Harrington. Harrington completed an application for such a policy with Carolina Casualty Insurance Company and submitted it to Networked Insurance Agency, an intermediary insurance agent-broker. The application contained two questions particularly relevant to the instant action:

> 21. During the last 5 years, has any current or former Employee or third party made any Claim, or otherwise alleged discrimination, harassment, wrongful discharge and/or Wrongful Acts against any Insured?
>
> A Claim is not limited to the filing of a lawsuit or comlaint with the Equal Employment Opportunity Commission or similar state or local agency. A Claim may also include a written demand by any current or former Employee seeking relief in connection with an employment-related dispute or grievance.
>
> 22. Is any Insured aware of any fact, circumstance or situation involving any Insureds that might reasonably be expected to result in a Claim, including, but not limited to, situations involving:
>
>     (a) Threats by any current or former Employee to third party to take legal or other action against any Insured, or a demand or request by any current or former Employee for monetary or non-monetary relief, arising out of any alleged discrimination, harassment, wrongful termination, constructive discharge, or other Wrongful Acts?
>
>     (b) Knowledge that any current or former Employee is engaging in, or has engaged in, acts of discrimination, harassment, or other Wrongful Acts?
>
>     (c) Complaints or accusations by other Employees or

3

> third parties that a current or former Employee is engaging in, or has engaged in, acts of discrimination, harassment, or other Wrongful Acts?
>
> (d) Warnings, reprimands, or other disciplinary measures taken against any current or former Employee for acts of discrimination, harassment, or other Wrongful Acts?

Zatulovsky Decl., Exh. M. Defendants answered "no" to these questions.

Immediately above the signature line, the application contained the following language:

> The undersigned, acting on behalf of all Insureds, declare that the statements set forth herein are true and correct and . . . agree that the particulars and statements contained in the Proposal Form and any material submitted herewith are their representations and that they are material and are the basis of the insurance contract. . . . If the Chairperson of the Board of Directors, President, Chief Executive Officer, or Chief Financial Officer of the Insured Entity knew as of the policy inception date that such declarations and statements contained in the Proposal Form(s) were untrue, inaccurate or incomplete, then this Policy will be void as to that person or persons and the Insured Entity.

FAC, Exhs. A at 17, B at 27. Darin Devincenzi signed the agreement on the line above, "President, Chief Executive Officer, or equivalent position." Id.

On April 30, Harrington notified Networked that one of Defendants' former employees had retained counsel, but that Harrington did not have any information about the reason for the retention, or the name of the employee who had retained counsel. Specifically, the email that Harrington sent to Networked stated, in full:

> The owner of Forbes notified us this morning that a prior employee has hired counsel. The details or more information is unknown at this time. Once we get the details I will make sure to inform you of them. Should you have any questions please feel free to contact our office.

Zatulovsky Decl., Exh. N. Neither party presented evidence that, at any point in the future, Harrington learned of further details about this employee or that such information was passed on to Network.

On the same date, Plaintiff provided a price quote to Networked for employment coverage for Defendants. On May 2, 2008, Networked notified Plaintiff that the original application incorrectly reported the number of Defendants' employees. On May 5, 2008, Plaintiff issued a revised price quote for employment coverage. On May 7, 2008, Devincenzi signed Defendants' application for the policy. On July 15, 2008, Plaintiff issued the employment policy to cover Defendants from May 5, 2008 to May 5, 2009.

One week earlier, on July 9, 2008, Lemke filed a complaint that contained causes of action against Devincenzi and Forbes Mill Steakhouse for sexual harassment in violation of the Fair Employment and Housing Act (FEHA); discrimination based on gender in violation of FEHA; failure to investigate discrimination, harassment and retaliation in violation of FEHA; wrongful constructive termination in violation of public policy; intentional infliction of emotional distress; sexual assault; sexual battery; negligent supervision; defamation; and declaratory relief. On August 8, 2008, Defendants tendered this claim to Plaintiff under the policy. Plaintiff defended the claim under a reservation of rights. On April 1, 2009, Plaintiff paid $50,000 to settle the Lemke action, which was dismissed with prejudice on April 20, 2009.

Plaintiff alleges that, on February 2, 2009, it first learned of Lemke's April 28, 2008 resignation letter. On February 27,

2009, Plaintiff filed the instant lawsuit to rescind the insurance policy and for reimbursement of defense fees and costs incurred in the Lemke action.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"Federal Rule of Civil Procedure 56(f) provides for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." United States v. Kitsap Physicians

Serv., 314 F.3d 995, 1000 (9th Cir. 2002). The moving party "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." Family Home and Finance Center, Inc. v. Federal Home Loan Mortgage Corp., 525 F.3d 772, 779 (9th Cir. 2008).

DISCUSSION

I. Defendants' Rule 56(f) Motion

Following the Court's instructions at the July 14, 2009 case management conference, Plaintiff filed an early summary judgment motion for rescission. In this motion, Plaintiff argues that the insurance policy it issued to Defendants should be rescinded because, prior to issuance, Defendants failed to disclose to Plaintiff the facts concerning Lemke's resignation. Plaintiff asserts that this information would have been material to its decision to issue employment insurance to Defendants.

Defendants respond by arguing that they notified Networked about the circumstances surrounding Lemke's resignation before purchasing the policy from Plaintiff. Defendants assert that Networked was Plaintiff's agent and that, therefore, knowledge of any information it provided to Networked was imputed to Plaintiff by law. However, Defendants claimed that, at the time their opposition to Plaintiff's summary judgment motion was due, they were not able to support this theory with evidence because they had several outstanding discovery requests pertaining to the alleged agency relationship between Networked and Plaintiff. Defendants claimed that this agency relationship would provide a valid defense to Plaintiff's summary judgment motion.

7

At the hearing on the motions, Defendants represented that the necessary discovery was complete and requested leave to file a supplemental brief. The Court granted this request and allowed Plaintiff to respond. Therefore, Defendants no longer have a need, under Rule 56(f), to continue Plaintiff's summary judgment motion. Accordingly, Defendants' motion is denied.

II. Plaintiff's Summary Judgment Motion

Plaintiff argues that it should be awarded summary judgment because Defendants submitted false answers to questions twenty-one and twenty-two of the policy application. The Court agrees.

Question twenty-one required Defendants to disclose whether in the past five years any current or former employee had "made any Claim, or otherwise alleged . . . harassment." Question twenty-two similarly asks whether Defendants were aware of any fact, circumstance or situation involving Defendants that might reasonably be expected to result in a Claim, such as "complaints or accusations by other Employees or third parties that a current or former Employee is engaging in, or has engaged in, acts of discrimination, harassment, or other Wrongful Acts." Defendants answered "no" to these questions, even though Lemke's resignation letter, received the day before Defendants submitted the insurance application, expressly referred to being "subject to sexual harassment by senior managers, peers and even owner's [sic] of the restaurant on nearly a weekly basis in the last year or so of my employment." Devincenzi Decl., Exh. 2. The "sexual harassment and retaliation harmed [Lemke's] mental and physical health" such that she could no longer work for Defendants. Id.

Defendants argue that their "no" answers to questions twenty-

one and twenty-two were accurate at the time, because it wasn't until March 28, 2008, when they received a Department of Fair Employment and Housing right to sue letter, that they become aware that a "former employee" had filed a "claim" against them. Defendants' narrow interpretation of the word "claim" in questions twenty-one and twenty-two is amiss. The questions asked Defendants whether any current or past employees "made any Claim, or <u>otherwise alleged</u> discrimination, <u>harassment</u>, wrongful discharge <u>and/or Wrongful Acts against any Insured</u>." Zatulovsky Decl., Exh. M (emphasis added). The clear language of the questions obliged Defendants to disclose Lemke's allegations of sexual harassment, retaliation and infliction of emotional distress. Defendants failed to do so and falsely denied that any such allegations had been made.

Under California law, every party to an insurance contract must "communicate to the other, in good faith, all facts within his knowledge which are . . . material to the contract . . . and which the other has not the means of ascertaining." Cal. Ins. Code § 332. "Materiality" is determined by "the probable and reasonable influence of the facts upon the party to whom the communication is due. . . ." Id. § 334. When an insured has engaged in "concealment," which is defined by statute as the "[n]eglect to communicate that which a party knows, and ought to communicate," id. § 330, the insurer may rescind the policy, even if the act of concealment was unintentional. Id. § 331. Similarly, a materially false representation at the time of, or before, issuance of a policy may result in rescission of the policy. Id. § 359. Materiality is determined "by the probable and reasonable effect

9

which truthful answers would have had upon the insurer." Thompson v. Occidental Life Ins. Co. of California, 9 Cal. 3d 904, 916 (1973). "The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." Id. The Court concludes that Defendants' answers to questions twenty-one and twenty-two were material false representations that entitle Plaintiff to rescission of the insurance policy.

In fact, Defendants do not dispute that Plaintiff would not have issued the policy had either question been answered differently. Rather, Defendants assert that Plaintiff waived its right to rescission because it neglected its duty to investigate whether Defendants accurately answered questions twenty-one and twenty-two. The day after Defendants applied for coverage, they notified Networked in an email that "a prior employee has hired counsel." Zatulovsky Decl., Exh. N. No further details were provided. Defendants assert that this email should have caused Plaintiff to investigate further Defendants' false responses on the policy application. The Court disagrees. The email is devoid of any meaningful detail to put Plaintiff on notice to investigate Defendants' application further. The email does not state which employee retained counsel nor does it speculate as to the reason for the retention. Further, Defendants have not submitted any other declarations to support the notion that they notified Networked as to the specific circumstances of the "prior employee" who "hired counsel." Even their claim that they did not have any details about why the unidentified employee had retained counsel was false. Moreover, Defendants signed the application for the

policy one week after they notified Harrington that a former employee retained counsel.  The Court concludes that Plaintiff did not receive any information that Defendants' responses to questions twenty-one or twenty-two were false or may have been false before it issued a policy to Defendants.  Therefore, Plaintiff has not waived its right to rescind the policy.

Because Defendants' waiver arguments fail and because Defendants made material misrepresentations on their policy application, the Court need not address whether Networked was Plaintiff's agent.  Accordingly, the Court grants Plaintiff's motion for summary judgment.

III. Claims Against Defendant Devincenzi

In Defendants' supplemental brief, they argue, for the first time, that Devincenzi cannot be personally liable as a matter of law.  Defendants cite <u>United States Liaiblity Ins. Co. v. Haidinger-Hayes, Inc.</u>, 1 Cal. 3d 586, 595 (Cal. 1970). There, the court held that a corporate officer "does not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done" and that "more must be shown than breach of the officer's duty to his corporation to impose personal liability to a third party upon him."  Here, Lemke alleged that Devincenzi sexually harassed her, and Plaintiff defended and settled Lemke's claims pursuant to a reservation of rights. Moreover, Devincenzi signed the false application himself. Therefore, the present case is distinguishable from one in which corporate officers are not liable solely by reason of their official position.  Accordingly, the Court denies this untimely

11

ground for opposition to Plaintiff's motion for summary judgment.

CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment (docket no. 38) and denies Defendants' cross-motion for a continuance under Rule 56(f) (docket no. 48). The insurance policy between the parties is rescinded and the clerk shall enter judgment for $83,281.06[2] in favor of Plaintiff and jointly and severally against all Defendants.

IT IS SO ORDERED.

Dated: 02/17/2010

CLAUDIA WILKEN
United States District Judge

---

[2] Plaintiff paid a total of $90,355.06 pursuant to the policy. This includes a $50,000 settlement to Lemke, $36,169.56 in defense fees and costs and $4,165.50 for the deductible. This amount is offset by $7,054 for the restoration of the premium paid for the policy. The net reimbursement to Plaintiff after the rescission is $83,281.06.

12